IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PATRICK JAMES, *formerly known as* PATRICK JAMES NIRRANEN,<br><br>        Plaintiff,<br><br>    v.<br><br>BENJAMIN T. SMITH,<br><br>        Defendant. | Case No. 6:24-cv-02036-SB<br><br>**FINDINGS AND RECOMMENDATION** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Patrick James ("James"), a self-represented litigant in custody at the Oregon State Penitentiary ("OSP"), filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that Dr. Benjamin T. Smith ("Dr. Smith"), a medical provider at OSP, denied him constitutionally adequate medical care in violation of the Eighth Amendment. Before the Court is Dr. Smith's motion to dismiss (ECF No. 12). For the following reasons, the Court recommends that the district judge deny the motion to dismiss.

///

///

PAGE 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

James alleges that for several years, he has suffered from painful and debilitating medical conditions for which Dr. Smith delayed or denied adequate medical care in violation of the Eighth Amendment.

In his first claim, James alleges that he began experiencing pain and numbness in both hands in April 2023. (First Am. Compl. ("FAC") ¶ 8, ECF No. 8.) Nearly a month later, in May 2023, James reported his symptoms to Dr. Smith, explaining that the pain and numbness in his hands disturbed his sleep, hindered his ability to dress himself, prevented him from properly cleaning himself after bowel movements, and caused him frequently to drop things because he was unable "to sense objects held in his hands." (*Id.* ¶ 10.) Dr. Smith diagnosed James with Carpal Tunnel Syndrome ("CTS") and recommended he wear wrist braces every night. (*Id.*)

In July 2023, Dr. Smith requested an electromyogram ("EMG")[1] to address James' worsening symptoms. (*Id.* ¶ 15.) However, Dr. Smith allegedly misclassified James' CTS as a "Level 4"[2] injury, knowing that such misclassification "could result in inappropriate denial of care or delay scheduling of medical services." (*Id.* ¶ 19.) As a result, the Therapeutic Level of Care ("TLC") Committee "recommended continued clinical follow-up (i.e., no medical treatment)" and did not approve any additional diagnostic testing or treatment of James' CTS. (*Id.* ¶ 21.)

---

[1] An EMG "is a test that determines whether a person's perceived muscle weakness is caused by a disease within the muscle or by a problem nerve supplying the muscle." (FAC ¶ 16.)

[2] Level 4 care and treatment "may be valuable to a certain individual but is significantly less likely to be cost-effective or to produce substantial long-term gain or improvement." (FAC ¶ 17, quoting OR. ADMIN R. 291-124-0041(6).) Examples of Level 4 care and treatment include "tattoo removal, minor nasal reconstruction, oral aphthous ulcers, elective circumcision, common cold, infectious mononucleosis, [and] surgery for gynecomastia." OR. ADMIN. R. 291-124-0041(6)(a)(B).

PAGE 2 – FINDINGS AND RECOMMENDATION

In the months that followed, James continued to report severe pain and numbness in his hands. (*Id.* ¶¶ 22-25.) However, Dr. Smith declined to perform or recommend any additional testing or treatment, choosing instead to continue "monitoring" James' symptoms. (*Id.*)

In February 2024, Dr. Smith submitted to the TLC Committee another request that James undergo an EMG but again misclassified James' CTS as a Level 4 injury. (*Id.* ¶ 26.) As a result, the TLC Committee recommended "continued clinical follow-up" rather than any discrete testing procedures or treatment. (*Id.* ¶ 27.) Dr. Smith thereafter told James that an EMG "was of no value." (*Id.* ¶ 28.)

In May 2024, Dr. Smith again submitted to the TLC Committee a request to provide James with an EMG. (*Id.* ¶ 31.) Although OSP's chief medical officer had recently recommended an EMG after observing "noticeable atrophy" in James' hands, Dr. Smith again misclassified James' CTS as a Level 4 injury. (*Id.* ¶¶ 29-30.) The TLC Committee ultimately approved Dr. Smith's request. (*Id.* ¶ 31.)

James' EMG occurred in July 2024, the results of which indicated moderate and severe CTS in James' wrists. *(Id.* ¶¶ 31-32.) Dr. Smith recommended surgery to address James' CTS, which the TLC Committee approved on August 1, 2024. (*Id.* ¶¶ 33-34.) Despite such approval, Dr. Smith did not follow up to ensure timely scheduling for James' surgery or escalate the issue to ODOC Health Services management when James' surgery was not scheduled. (*Id.* ¶ 34.) As of February 2025, James still had not received corrective surgery to relieve the pain and numbness in his hands. (*Id.* ¶ 35.)

In his second claim, James alleges that he suffered a sudden injury to his left shoulder while lifting weights in January 2022. (*Id.* ¶ 37.) Dr. Smith allegedly "did not perform any physical examination" but ordered an x-ray. (*Id.* ¶ 38.) Based on the x-ray results, Dr. Smith

PAGE 3 – FINDINGS AND RECOMMENDATION

diagnosed James with "degenerative joint disease in the glenohumeral joint and acromioclavicular . . . joint." (*Id.* ¶ 41.) Although James continued to complain of shoulder pain, Dr. Smith "decided on no further treatment" and instead advised James to "wait four months and see how things worked out." (*Id.* ¶ 42.)

In October 2022, James complained to Dr. Smith of bilateral shoulder pain. (*Id.* ¶ 45.) Dr. Smith noted that James likely had tendonitis unresponsive to non-steroidal anti-inflammatory drugs ("NSAIDs") and recommended physical therapy. (*Id.*) The TLC Committee rejected Dr. Smith's recommendation and instead approved a cortisone injection, which James declined. (*Id.* ¶¶ 46, 48.) Dr. Smith thereafter advised James to "continue shoulder stretches and NSAIDs" to manage his pain. (*Id.* ¶ 47.)

In April 2023, the TLC Committee approved three physical therapy sessions, which ultimately produced only "minor improvements" in James' condition. (*Id.* ¶¶ 48-52.) Despite James' continuing pain and limited mobility, Dr. Smith declined to order additional diagnostic testing or refer James to an orthopedic specialist. (*Id.* ¶¶ 53-55.) To date, James continues to suffer pain and loss of range of motion in his shoulders and has not been evaluated by an orthopedic specialist. (*Id.* ¶ 61.)

Finally, in his third claim, James alleges that he began to experience "throbbing pain" and hearing loss in his right ear in May 2023. (*Id.* ¶ 63.) When James reported his symptoms to Dr. Smith in July 2023, Dr. Smith ordered James' ear to be flushed but "provided no further treatment." (*Id.* ¶ 66.)

During an appointment in November 2023, James again complained to Dr. Smith that he was suffering ear pain and hearing loss. (*Id.* ¶ 77.) Although James suggested that he see an ear,

nose, and throat specialist ("ENT"), Dr. Smith disagreed, ordering lab work and prescribing antibiotics instead. (*Id.* ¶¶ 77-78.)

In December 2023, Dr. Karen Harris, OSP's chief medical officer, examined James' ear and recommended imaging to help reach a diagnosis. (*Id.* ¶ 81.) James then met with Dr. Smith in January 2024 to discuss the appointment with Dr. Harris and to review James' plan of care. (*Id.* ¶ 84.) Soon thereafter, the TLC Committee approved a referral to an ENT. (*Id.* ¶ 86.)

In May 2024, an ENT evaluated James and diagnosed him with "recurrent acute otitis media with rupture of the right ear drum and eustachian tube dysfunction." (*Id.* ¶ 87.) According to James, the ENT told him that "a medically unreasonable amount of delay had occurred between [his initial] report of symptoms" and his referral to a specialist, and that had he been referred sooner, the ENT could have performed a procedure to relieve his symptoms. (*Id.*)

## LEGAL STANDARDS

### I. THE PRISON LITIGATION REFORM ACT

The Prison Litigation Reform Act, 28 U.S.C. § 1915A, obligates the Court to screen complaints filed by individuals in custody who "seek[] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the action if it determines that the complaint (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Dismissal of a self-represented litigant's complaint for failure to state a claim "is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

///

///

PAGE 5 – FINDINGS AND RECOMMENDATION

## II.     RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a plaintiff's "complaint pleads facts that are 'merely consistent with' a defendant's liability, [the plaintiff's complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.    SELF-REPRESENTED LITIGANTS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants. *See Washington v. Kijakazi*, 72 F.4th 1029, 1039-40 (9th Cir. 2023) ("[T]here are limits to what a court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)); *see also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024)

PAGE 6 – FINDINGS AND RECOMMENDATION

(rejecting the self-represented plaintiff's arguments that the magistrate judge failed to provide "meaningful assistance" on exhaustion, or "take into account the amount of time remaining on [his] one-year statute of limitations in requiring a response to her order" (citing *Pliler*, 542 U.S. at 231)).

For example, "[a]lthough [courts] construe pro se pleadings liberally, especially in civil rights cases, [they] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412-13 (9th Cir. 2020) (same); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (observing that a court's "liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled") (simplified).

## DISCUSSION

### I. OFFICIAL CAPACITY CLAIMS

James filed this lawsuit against Dr. Smith "in his individual and official capacities[.]" (FAC at 1.) Dr. Smith moves to dismiss James' official capacity claims, arguing that the Eleventh Amendment bars such claims. (Def.'s Mot. Dismiss ("Def.'s Mot.") at 5, ECF No. 12.)

The Eleventh Amendment bars suit in federal court against either a state or an agency acting under its control absent a clear and equivocal waiver. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (explaining that absent waiver, "neither a State nor agencies acting under its control may 'be subject to suit in federal court'" (quoting *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 480 (1987))). This jurisdictional bar extends to suits for damages filed against state officials in their official

PAGE 7 – FINDINGS AND RECOMMENDATION

capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (holding that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *see also Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (noting that the Eleventh Amendment "prohibits actions for damages against an 'official's office,' that is, actions that are in reality suits against the state itself"); *Bair v. Krug,* 853 F.2d 672, 675 (9th Cir. 1988) (noting that the Eleventh Amendment "bars action against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages").

James argues that his official capacity claims are not barred because he "seeks monetary damages against [Dr. Smith] in his individual capacity" and declaratory relief in his official capacity. (Pl.'s Resp. Mot. Dismiss ("Pl.'s Resp.") at 5, ECF No. 14.) James is correct that "the Eleventh Amendment does not bar action[s] seeking only *prospective* declaratory or injunctive relief against state officers in their official capacities." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 (9th Cir. 2002) (quoting *L.A. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). Thus, to the extent James seeks prospective declaratory relief against Dr. Smith, the Court recommends that the district judge deny Dr. Smith's motion to dismiss James' claims against him in his official capacity.

**II.    EIGHTH AMENDMENT CLAIMS**

James alleges that since 2022, Dr. Smith has denied him adequate medical care for several conditions in violation of the Eighth Amendment. Dr. Smith moves to dismiss James' medical claims, arguing that the allegations in the amended complaint are insufficient to establish that Dr. Smith acted with deliberate indifference to James' serious medical needs. (Def.'s Mot. at 4-5.)

///

PAGE 8 – FINDINGS AND RECOMMENDATION

To state an Eighth Amendment claim for the delay or denial of adequate medical care, a plaintiff must allege facts to support a reasonable inference that the defendant acted with deliberate indifference to his serious medical needs. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). The deliberate indifference prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (simplified); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (explaining that a prison official is deliberately indifferent "only if he knows of and disregards an excessive risk to an inmate's health and safety" (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002))). This standard "requires more than ordinary lack of due care." *Colwell*, 763 F.3d at 1066; *see also Toguchi*, 391 F.3d at 1057 (explaining that "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights" (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc))). Indeed, a defendant must have "purposefully ignore[d] or fail[ed] to respond to prisoner's pain or possible medical need." *McGuckin*, 974 F.2d at 1060.

Dr. Smith asserts, in generalized fashion, that the allegations in the amended complaint reflect that he addressed James' complaints "with medical opinion and advice and treatment," and that he submitted for the TLC Committee's review "recommendations and referral for diagnostic testing and surgery." (Def.'s Mot. at 4.) Dr. Smith argues that "[a]lthough [James] may have been limited or denied certain things at various points in his treatment," James' disagreement with Dr. Smith's chosen course of treatment is insufficient to establish deliberate

PAGE 9 – FINDINGS AND RECOMMENDATION

indifference. (*Id.* at 5.) Dr. Smith thus argues that James' allegations fail to state a viable Eighth Amendment medical claim because he has not adequately alleged deliberate indifference. (*Id.*)

James acknowledges that mere disagreement with Dr. Smith's treatment plan is insufficient to state a Section 1983 claim but argues that at least with respect to his first claim,[3] he plausibly alleges that Dr. Smith's treatment plan "was tantamount to a denial of treatment through delay." (Pl.'s Resp. at 4.) James points to his detailed allegations concerning Dr. Smith's "wait and see" approach to James' persistent pain, numbness, and decreased functionality in his hands, and reiterates that he has yet to receive corrective surgery or other treatment to relieve his symptoms. (*Id.* at 2-4.)

Where, as here, an individual in custody alleges that the delay of medical treatment amounts to deliberate indifference, he must show that the delay caused "significant harm and that Defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002); *see also Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (explaining that mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference"). James alleges in his amended complaint a two-year period in which Dr. Smith primarily utilized a "wait and see" approach in response to James' frequent complaints of unrelenting pain, increased difficulties performing daily life activities, and observable atrophy in his hands. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019) (concluding that continuing ineffective treatment despite knowledge of ongoing harm is deliberately indifferent, and explaining that "[t]he provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth

---

[3] James analyzes only his first claim in his response but states that "the analysis of [his] other two claims for relief would yield similar results[.]" (Pl.'s Resp. at 2.)

PAGE 10 – FINDINGS AND RECOMMENDATION

Amendment's requirements"); *see also* McGuckin, 974 F.2d at 1062 (noting that the continuation of needless pain on account of the delay in medical treatment may constitute the "harm" necessary to establish an Eighth Amendment violation).

James further alleges that Dr. Smith intentionally misclassified his CTS as a Level 4 (minor) injury on multiple occasions, all but assuring that the TLC Committee would deny any recommendations for diagnostic testing or treatment. *See Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (explaining that an individual in custody "need not prove that he was completely denied medical care" because "he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment"). Liberally construing these facts in the light most favorable to James, the Court finds that the allegations in his first claim are sufficient to state a cognizable Eighth Amendment medical claim against Dr. Smith. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (explaining that on a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"); *see also Williams v. Swarthout*, No. 2:11-cv-1687 LKK AC P, 2013 WL 417678, at *6 (E.D. Cal. Jan. 31, 2013) (denying motion to dismiss where the plaintiff alleged that the defendants delayed CTS surgery for nearly a year and that "the delay in treatment resulted in pain during the delay, and caused further persisting damage to his hand and arm"), *findings and recommendation adopted*, 2013 WL 1325440 (E.D. Cal. Mar. 29, 2013).

Neither party has directly analyzed in their briefing the sufficiency of James' allegations with respect to his second or third claims for relief. The Court nevertheless has reviewed James' claims and finds that they similarly contain allegations that Dr. Smith unreasonably delayed medical care for James' shoulder and ear injuries, causing James to suffer prolonged pain that continues to impede his daily functions. (*See* Am. Compl. ¶¶ 42-47, alleging that months after

PAGE 11 – FINDINGS AND RECOMMENDATION

James first reported pain in his shoulder, Dr. Smith "decided on no further treatment" and instead advised James "to wait four months and see how things worked out"; *id.* ¶¶ 77-78, alleging that Dr. Smith declined to refer James to an ENT and simply prescribed a ten-day dose of antibiotics despite acknowledging that he did not "understand what's going on with [James'] right ear" because James had already "been given some powerful antibiotics" that should have relieved the problem.) In the absence of any direct argument to the contrary, the Court concludes that liberally construed, James' second and third claims contain sufficient allegations to state a viable Eighth Amendment claim. The Court thus recommends that the district judge deny Dr. Smith's motion to dismiss.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY Dr. Smith's motion to dismiss (ECF No. 12).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**IT IS SO ORDERED.**

DATED this 5th day of December, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge